**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-25-0000518
06-JUL-2026
12:18 PM
Dkt. 84 SO**

NO. CAAP-25-0000518


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


BANK OF AMERICA, N.A., Plaintiff-Appellee,
v.
CONSTANCE MAY MAGALONG, ALSO KNOWN AS CONSTANCE M. MAGALONG,
INDIVIDUALLY AND AS SUCCESSOR TRUSTEE TO THE RICARDO EBIA, SR.
TRUST, DATED JULY 29, 2010, Defendant-Appellant,
and
GARLY SISON MURILLO; VILLAGE PARK COMMUNITY ASSOCIATION,
Defendants-Appellees,
and
JOHN DOES 1-20; JANE DOES 1-20; DOE CORPORATIONS 1-20; DOE
ENTITIES 1-20; AND DOE GOVERNMENTAL UNITS 1-20, Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CCV-24-0000733)


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Guidry and Gluck, JJ.)


Defendant-Appellant Constance May Magalong (**Magalong**)
appeals from the June 16, 2025 "Findings of Fact, Conclusions of
Law and Order Granting in Part and Denying in Part Plaintiff's
Motion for Summary Judgment Against All Defendants and for
Interlocutory Decree of Foreclosure" and the June 16, 2025
"Judgment" entered by the Circuit Court of the First Circuit

(**Circuit Court**).[1]  Magalong contends the Circuit Court erred in granting summary judgment because (1) Plaintiff-Appellee Bank of America, N.A. (**Bank**) violated Hawai'i Revised Statutes (**HRS**) § 454M-5.5 in refusing to modify the loan despite Magalong's efforts; (2) the Bank failed to prove that the promissory note (**Note**) was validly endorsed; and (3) the Bank did not establish that its documents were trustworthy.  Consequently, Magalong argues, the Circuit Court erred in concluding that the Bank was entitled to foreclose on the property.  After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Magalong's contentions as follows, and affirm.

        **(1) HRS § 454M-5.5:**  Magalong argues that the Circuit Court erred in granting summary judgment because the Bank refused to modify the loan despite Magalong's efforts from 2012 to 2016 to do so, pointing to HRS § 454M-5.5 (Supp. 2015).  HRS § 454M-5.5(a), enacted in 2015, provides that "[m]ortgage servicers shall make reasonable and good faith efforts . . . to engage in appropriate loss mitigation options, including loan modifications, to assist borrowers to avoid foreclosure.  Mortgage servicers shall provide timely and appropriate responses to borrower inquiries and complaints regarding available loss mitigation options . . . ."  However, in the Circuit Court proceedings, Magalong did not argue that the Bank should be denied foreclosure for having violated HRS § 454M-5.5.  Accordingly, this argument has been waived.  See HRS § 641-2(b) (2016) ("The appellate court . . . need not consider a point that was not presented in the trial court in an appropriate manner.");  Hawaii Ventures, LLC v. Otaka, Inc., 114 Hawai'i 438,

---

      [1]     The Honorable James H. Ashford presided.

500, 164 P.3d 696, 758 (2007) ("As a general rule, if a party does not raise an argument at the circuit court level, that argument will be deemed to have been waived on appeal[.]" (cleaned up) (quoting <u>Kemp v. State of Hawaiʻi Child Support Enf't Agency</u>, 111 Hawaiʻi 367, 391, 141, P.3d 1014, 1038 (2006))). Moreover, as Magalong acknowledges, she is not a borrower under the Note; thus, the Bank owes her no obligation under HRS § 454M-5.5.[2]

Magalong further argues that the doctrine of laches should be applied because she requested various loan modifications beginning in 2012, and the Bank waited too long before filing for foreclosure in 2017. This argument is also without merit.

First, as Magalong points out, Ebia paid the amounts due on the mortgage loan until his death in 2013, notwithstanding Magalong's correspondence on his behalf requesting that the Bank modify his debt. There was no basis for the Bank to foreclose when there was no default. In addition, as noted above, Magalong is not a borrower on the subject loan. In her arguments to the Circuit Court, Magalong cited no legal authority or contract provision requiring the Bank to provide a loan "modification" allowing her to assume the loan, with part of the principal amount of the debt "forgiven," and a lower rate of interest, as she requested in her correspondence. Thus, it is unclear how the Bank's failure to provide her a "loan modification" implicates the doctrine of laches.

---

[2] Magalong represents that her father, Ricardo Ebia, Sr. (**Ebia**), passed away on July 21, 2013. HRS § 454M-5.5 was not enacted until May 28, 2015. Although Magalong sent correspondence requesting a loan modification for <u>herself</u> subsequent to May 2015, all of Magalong's correspondence regarding a possible loan modification on behalf of her father preceded the enactment of HRS § 454M-5.5.

The Hawaiʻi Supreme Court has also held that, "[u]nder ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute." Yokochi v. Yoshimoto, 44 Haw. 297, 300, 353 P.2d 820, 823 (1960). The Supreme Court recently reaffirmed this principle: "Foreclosure is an equitable action. 'A court of equity is not bound by the statute of limitations, but, in the absence of extraordinary circumstances, it will usually grant or withhold relief in analogy to the statute of limitations relating to law actions of like character.'" Bank of New York Mellon v. White, 156 Hawaiʻi 246, 248, 573 P.3d 629, 631 (2025) recon. denied sub nom., No. SCWC-21-0000400, 2025 WL 2461282 (Haw. Aug. 27, 2025) (quoting Yokochi, 44 Haw. at 300, 353 P.2d at 823) (cleaned up). Here, "the statute of limitations for mortgage foreclosure actions is twenty years." See id. at 247, 573 P.3d at 630. The Bank filed its action four years later, well within the limitations period.

Magalong presented no declaration or other evidence reasonably susceptible to a conclusion that there were "extraordinary circumstances" here or any supporting authority that would reduce the twenty-year limitations period to a four-year period based on laches. Accordingly, we conclude that the Circuit Court did not err in rejecting this argument.

**(2) Endorsement of the Note:** Magalong argues that two individuals who endorsed the Note (Michele Sjolander and Laurie Meder) lacked authority to do so, such that the Bank has not proved its entitlement to enforce the Note; alternatively, Magalong contends that she has raised a genuine issue of material fact as to the Bank's authority to possess the Note (based on the signatures thereto), thus precluding summary judgment. Again, we disagree.

In its motion for summary judgment, the Bank submitted evidence that it had possession of the Note and that the Note was indorsed in blank.  Specifically, Stormy Price of PennyMac Loan Services, LLC (**PennyMac**), the Bank's servicing agent, declared that "Plaintiff . . . had possession of the original Note, indorsed in blank, as of 06/03/2024, the date of the filing of the complaint in this foreclosure."[3]  Pursuant to HRS § 490:3-308(a) (2008), signatures on an indorsement are presumptively authentic and authorized:

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings.  If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.

(Emphases added.)  Magalong's opposition to the Bank's motion for summary judgment did not present any evidence to create a genuine issue of material fact as to authenticity and authorization, let alone sufficient evidence to overcome the presumption of authenticity and authorization.

HRS § 490:1-206 (2008) provides that "[w]henever this chapter creates a 'presumption' with respect to a fact, or provides that a fact is 'presumed', the trier of fact shall find the existence of the fact unless evidence is introduced that supports a finding of its nonexistence."  In opposing the Bank's motion for summary judgment, however, Magalong did not introduce any evidence to suggest that Sjolander's and Meder's signatures were forged or unauthorized.  Instead, she makes three meritless arguments.  First, she points to requirements in a Fannie Mae

---

[3]   The Bank attempted to foreclose in 2017, as referenced above, but the Circuit Court granted the Bank's motion to dismiss the complaint without prejudice in 2024.  The Bank then filed a new complaint.

guidance document, despite her counsel's concession before the Circuit Court that "[t]here is no evidence that it is a Fannie Mae loan." Second, she points to a registration requirement for officers and directors doing business in Hawai'i that was enacted in 2010 (see HRS § 454F-1.5 (Supp. 2010)), despite the fact that the Note is dated 2008 (i.e., before the registration requirement went into effect). Regardless, as the Circuit Court stated, "if CWB Mortgage Ventures, LLC didn't register with the [State Department of Commerce and Consumer Affairs] by 2010 or a year later by 2011 to do business as required by Chapter 454F of the Hawaii Revised Statues, that does not have any tendency to prove that the two endorsers were not authorized to endorse." Third, Magalong points to annual reports for "Countrywide Mortgage Ventures, LLC," which do not contain Sjolander's or Meder's names, as evidence that Sjolander and Meder were unauthorized signatories. But the Note is clear that Sjolander and Meder are signing as officers of different corporate entities ("CWB Mortgage Ventures, Inc." and "Countrywide Bank, FSB"). The fact that Sjolander and Meder are not listed on an annual report of a different corporate entity says nothing about their authority to sign on behalf of CWB Mortgage Ventures, Inc. and/or Countrywide Bank, FSB.

In sum, Magalong has presented no evidence to overcome the statutory presumption of authenticity and authority.

**(3) Admissibility of prior servicers' records:** Magalong's final argument is that the Bank's records should not have been admitted because there is insufficient evidence of trustworthiness. We disagree.

Here, Stormy Price – the Bank's servicing agent – declared that PennyMac incorporated the previous servicer's records into its own and further declared that, before doing so, PennyMac

> conducted an independent check into Prior Servicer's records and found them in keeping with industry wide loan servicing standards and only integrated them into PennyMac's own business records after finding Prior Servicer's records were made as part of a regularly conducted activity, met industry standards and determined to be trustworthy.

She described the process for reviewing loan information transferred from prior servicers. She further declared that "[u]pon becoming the loan servicer, PennyMac took custody and control of loan documents and business records of Prior Servicer and incorporated all such records into the business records of PennyMac[,]" and that "PennyMac relies upon the accuracy of Prior Servicer's records and those records are now a part of and used for all purposes in the conduct of PennyMac's regularly conducted activity of keeping and maintaining its own business records." In sum, she declared: "PennyMac did review and determine Prior Servicer's business records were trustworthy otherwise it would not have incorporated it [sic] into its own records."

As for PennyMac's own records, Price stated that she had "personal knowledge of PennyMac's procedures for creating" business records; that PennyMac's records are "made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge"; and that the records are "kept in the course of PennyMac's regularly conducted business activities" as a "regular practice."

Turning to the relevant loan documents in the instant case, Price declared that she personally reviewed the relevant documents – including the Note, the Bailee Letter, the Mortgage, the Assignment of Mortgage, the Default Letter, and the payment history on the loan – and "verified the accuracy of the loan

history and all related loan records." Based on those records, Price declared that the borrowers on the loan (including Ebia) defaulted, notice was given to the borrowers, and the default had not been cured.

The Bank thus provided sufficient information regarding the authenticity and trustworthiness of the Note. See U.S. Bank Trust v. Verhagen, 149 Hawaiʻi 315, 325-27, 489 P.3d 419, 429-31 (2021); Bank of Am., N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 370-71, 390 P.3d 1248, 1257-58 (2017). The Circuit Court did not err in granting summary judgment.

Based on the foregoing, we affirm the June 16, 2025 Judgment.

DATED: Honolulu, Hawaiʻi, July 6, 2026.

On the briefs:

Keith M. Kiuchi
for Defendant-Appellant.

Lisa K. Swartzfager and
Patricia McHenry
(Cades Schutte)
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Kimberly T. Guidry
Associate Judge

/s/ Daniel M. Gluck
Associate Judge